# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NINTENDO OF AMERICA INC., | NO. |
| Plaintiff, | COMPLAINT |
| v. | JURY DEMAND |
| TROPIC HAZE LLC, | |
| Defendant. | |

## PRELIMINARY STATEMENT

Plaintiff Nintendo of America Inc. ("Nintendo of America Inc." or "Plaintiff"), by and through its counsel, on personal knowledge as to its own actions and on information and belief as to the actions, capabilities, and motivations of others, hereby alleges as follows:

1.      Nintendo of America Inc., a wholly-owned subsidiary of Nintendo Co., Ltd., markets and distributes electronic video game consoles, games, and accessories developed by Nintendo Co., Ltd., including the Nintendo Switch, Nintendo Switch Lite, and Nintendo Switch OLED consoles (collectively the "Nintendo Switch").  Nintendo of America Inc. and Nintendo Co., Ltd. are together referred to herein as "Nintendo."  Nintendo also makes award-winning and beloved video games that can be played only on the Nintendo Switch, including such well-known franchises as *Mario* and *The Legend of Zelda*.  Nintendo has sold over 139 million Nintendo Switch consoles (and counting), making it the third most popular video game console of all time.

2.      Defendant Tropic Haze LLC is an entity that owns, develops, and operates "Yuzu," a video game emulator for Nintendo Switch games.  A video game emulator is a piece of software that allows users to unlawfully play pirated video games that were published only for a specific console on a general-purpose computing device.  Yuzu allows Nintendo Switch games, which Nintendo authorizes for play solely on Nintendo Switch consoles, to be played

1

on Windows, Linux, or Android systems.  That means that people are able to play pirated Nintendo Switch games on PCs and Android devices, which would not otherwise be possible due to the protections that Nintendo has put into place on its consoles and games.

3.     To protect its intellectual property rights and its investment, as well as the investments of its third-party developers, Nintendo designed the Nintendo Switch and Nintendo Switch video games with sophisticated security features, or technological measures (sometimes referred to as technological protection measures, or "TPMs"), meant to prevent people from playing unauthorized or pirated copies of Nintendo's video games, whether on Nintendo Switch consoles or on other platforms.  Specifically, every Nintendo Switch video game stored on a Nintendo physical cartridge or on a Nintendo Switch console as a digital download is secured with multiple technological measures, including encryption that scrambles the audiovisual content in the game file to make it unreadable without the use of proprietary cryptographic keys.  In the ordinary course of operation, an authentic Nintendo Switch console will use certain cryptographic keys available to the console, commonly referred to as the "prod.keys," to decrypt other cryptographic keys associated with games, and then use those keys to decrypt lawfully-purchased games during runtime.  Only if the games are dynamically decrypted during operation of the console may the user play those games.

4.     Nintendo also has technological measures on the Nintendo Switch console itself, including additional layers of encryption, which prevent users from unlawfully accessing or modifying the console—including to procure the prod.keys—and from accessing or copying games stored on the console or on a cartridge inserted in the console.

5.     Yuzu unlawfully circumvents the technological measures on Nintendo Switch games and allows for the play of encrypted Nintendo Switch games on devices other than a Nintendo Switch.  Yuzu does this by executing code necessary to defeat Nintendo's many technological measures associated with its games, including code that decrypts the Nintendo Switch video game files immediately before and during runtime using an illegally-obtained

copy of prod.keys (that ordinarily are secured on the Nintendo Switch). Users obtain the prod.keys either through unlawful websites or by unlawfully hacking a Nintendo Switch console. The lead developer of Yuzu—known online under the alias "Bunnei"—has publicly acknowledged most users pirate prod.keys and games online, and Yuzu's website provides instructions for its users telling them how to unlawfully hack their own Nintendo Switch and how to make unauthorized copies of Nintendo games and unlawfully obtain prod.keys. Only because Yuzu decrypts a Nintendo Switch game file dynamically during operation can the game be played in Yuzu. **In other words, without Yuzu's decryption of Nintendo's encryption, unauthorized copies of games could not be played on PCs or Android devices**.

6.      With Yuzu in hand, nothing stops a user from obtaining and playing unlawful copies of virtually any game made for the Nintendo Switch, all without paying a dime to Nintendo or to any of the hundreds of other game developers and publishers making and selling games for the Nintendo Switch. In effect, Yuzu turns general computing devices into tools for massive intellectual property infringement of Nintendo and others' copyrighted works.

7.      Defendant employs several developers who operate as the company's agents, including Yuzu's author and lead developer, Bunnei. Defendant traffics in the Yuzu software on a website YUZU-EMU.ORG, on GITHUB.COM, and, recently, on Google Play (an app store for Android devices). YUZU-EMU.ORG provides detailed instructions[1] and FAQs on how to install Yuzu and get it running with unlawful copies of Nintendo Switch games. YUZU-EMU.ORG also has a blog section with regular posts about updates to the software (which include discussion of different Nintendo games running in the emulator), a list of thousands of Nintendo Switch games that Yuzu developers have tested in Yuzu and confirmed can be played, and screenshots of Nintendo Switch games being played in the emulator. The website additionally links to a variety of other circumvention software that can hack into the Nintendo

---

[1] *See Quickstart Guide*, Yuzu, https://yuzu-emu.org/help/quickstart/ (accessed February 21, 2024).

Switch console, including to allow users to obtain and further distribute the prod.keys.

8.     Defendant and its agents' unlawful conduct has caused Nintendo and all those third parties that develop games for the Nintendo Switch platform tremendous harm. Nintendo's copyrighted games are at the heart of its popularity, and Nintendo's business necessarily relies upon the authorized and licensed distribution of authentic copies of its video games, and upon the trust of third-party game developers that the games they develop will be secure on Nintendo's consoles and will not be illegally distributed or played.  This is exactly why Nintendo has invested and continues to invest in technological measures to secure its consoles and games.

9.     Recognizing the threats faced by copyright owners like Nintendo in the age of digital piracy, Congress enacted the Anti-Circumvention and Anti-Trafficking provisions of the Digital Millennium Copyright Act ("DMCA"), making it illegal to circumvent or traffic in devices that circumvent technological measures put into place by copyright owners to protect against unlawful access to and copying of copyrighted works.

10.    Yuzu falls squarely within these provisions.  Yuzu circumvents Nintendo's technological measures on its games; thus, Defendant's development and distribution of Yuzu constitutes unlawful trafficking in software primarily designed to circumvent technological measures, and the confirmed use of the emulator by Bunnei and other Yuzu developers as Defendant's agents to decrypt and play Nintendo games constitutes unlawful circumvention. Defendant and its agents' trafficking and circumvention have directly injured and damaged Nintendo, infringe and threaten irreparable injury to Nintendo's intellectual property rights, and violate the Anti-Circumvention and Anti-Trafficking provisions of the DMCA, 17 U.S.C. § 1201 *et seq*., entitling Plaintiff to the relief sought herein.

11.    Nintendo authorizes copies of its Nintendo Switch games to be played only on Nintendo Switch consoles.  As noted above, in addition to the *game* technological measures, Nintendo protects its games behind additional technological measures on Nintendo Switch

*consoles*.  To get any game off a Nintendo Switch console and into the Yuzu environment to be played, therefore, Bunnei and other of Defendant's agents must: (1) obtain the Nintendo Switch's cryptographic keys (the prod.keys) from a hacked console, which violates Nintendo's rights under the DMCA; and (2) make at least one unauthorized copy of a Nintendo Switch game, which, when the copied game is Nintendo's, violates Plaintiff's right of reproduction under the Copyright Act, 17 U.S.C. §§ 106, 501, entitling Plaintiff to the relief sought herein.

12.    Indeed, in multiple U.S. federal cases, courts have entered judgments providing that trafficking in devices that circumvent the technological measures on the Nintendo Switch console and Nintendo Switch games violates the DMCA.  *See Nintendo of America Inc. v. Dilts et al.*, No. 3:20-cv-01076 (N.D. Ohio 2020); *Nintendo of America Inc v. ANXCHIP.COM et al.*, No. 2:20-cv-00738-TSZ (W.D. Wash. 2020); *Nintendo of America Inc v. Gary Bowser*, No. 2:21-cv-00519-RSL (W.D. Wash. 2021); *United States v. Louarn et al.*, No. 2:20-cr-00127-RSL (W.D. Wash. 2020).

13.    Defendant and its agents are fully aware of the use of Yuzu by others in performing circumvention, and in facilitating piracy at a colossal scale.  As to circumvention, Yuzu's website acknowledges that the Nintendo Switch's decryption keys (the prod.keys) are required to decrypt games and includes links to software that unlawfully extract those keys from the Nintendo Switch.[2]  As to piracy, for instance, one recent major Nintendo video game, *The Legend of Zelda: Tears of the Kingdom*, was unlawfully distributed a week and a half before its release by Nintendo.  Infringing copies of the game that circulated online were able to be played in Yuzu, and those copies were successfully downloaded from pirate websites over ***one million times*** before the game was published and made available for lawful purchase by Nintendo.  Many of the pirate websites specifically noted the ability to play the game file in Yuzu.  Defendant's development and distribution of Yuzu to the public materially contributes

---

[2] *See Quickstart Guide*, Yuzu, https://yuzu-emu.org/help/quickstart/ ("Dumping Decryption Keys") (accessed February 21, 2024).

to and induces those third parties to infringe the copyrights in Nintendo's games.  Defendant is thus secondarily liable for the infringement committed by the users to whom it distributes Yuzu.

14.    Nintendo has invested enormous resources into protecting the Nintendo Switch console and its games through technological measures to ensure that Nintendo's games are purchased lawfully and not illegally copied, are not leaked before publication, and that the integrity of Nintendo's ecosystem remains safe and free of piracy and cheating.  This protects the tremendous creative investment of Nintendo and its employees and of hundreds of its third-party licensees.  Today, Yuzu provides any Internet user in the world with the means to unlawfully decrypt and play virtually any Nintendo Switch game—including Nintendo's current generation and most popular games—without ever paying a dime for a Nintendo console or for that game.  And to be clear, there is no lawful way to use Yuzu to play Nintendo Switch games, including because it must decrypt the games' encryption.  Defendant must be held accountable for willfully providing users the means to violate Nintendo's intellectual property rights at such a scale.  The harm to Nintendo is manifest and irreparable.

## NATURE OF THE ACTION

15.    This is a civil action seeking equitable relief and damages for unlawful circumvention of copyright protection systems (technological measures) and unlawful trafficking in circumvention technology in violation of the DMCA, 17 U.S.C. § 1201 *et seq.*, and for unlawful reproduction and distribution of protected works in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 106, 501, 1201, & 1203.

17.    Defendant is subject to the jurisdiction of this Court pursuant to Federal Rule of Civil Procedure ("Rule") 4(k)(1) because it is a limited liability company formed in this District

with a principal office in this District. *See also* R.I. Gen. Laws § 7-16-4 ("Each [Rhode Island] limited liability company has the power . . . [t]o sue, be sued, complain and defend in its name in all courts."). Tropic Haze engages in systematic and continuous activity in the State of Rhode Island and is thus "at home" in this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and/or 28 U.S.C. § 1400(a) because Defendant is an entity with the capacity to be sued in its common name under applicable law and is subject to personal jurisdiction in this District. *See supra*, ¶ 17.

## THE PARTIES

19. Nintendo of America Inc. ("Nintendo of America Inc." or "Plaintiff") is a Washington corporation headquartered in Redmond, Washington. Nintendo of America Inc. is a wholly-owned subsidiary of Nintendo Co., Ltd., a Japanese company headquartered in Kyoto, Japan. Nintendo of America Inc. is responsible for the marketing and sale of Nintendo's products, and the enforcement of Nintendo's intellectual property rights, in the United States. Nintendo Co., Ltd. develops, and Nintendo of America Inc. markets and distributes, electronic video game consoles, games, and accessories. Collectively, Nintendo of America Inc. and Nintendo Co., Ltd. are referred to herein as "Nintendo."

20. Defendant Tropic Haze LLC is a Rhode Island limited liability company that develops and distributes the emulator known as "Yuzu." Defendant maintains a network of paid coders/developers who develop and maintain the software, including compiling and releasing weekly (and sometimes daily) updates to improve the software's ability to replicate the gameplay experience on Nintendo's authorized hardware and software. These developers are Defendant's agents and, on information and belief, are acting within the scope of their agency when committing the acts discussed herein, making Defendant liable for their unlawful conduct. Indeed, the very object of Defendant's business is to develop and distribute unlawful circumvention software. On information and belief, decisions regarding the development of

Yuzu, including new features to provide, platforms to launch on, and games to provide compatibility with, are made by Bunnei.  Defendant is primarily responsible for causing the distribution of Yuzu, including on the project's official website YUZU-EMU.ORG, on GITHUB.COM, and on third-party platforms such as Google Play.

21.     Defendant, through the above channels of distribution, traffics in Yuzu, which circumvents technological measures on Nintendo Switch games, and which facilitates infringement of Nintendo's copyrighted works on a massive national and international scale. Additionally, Defendant traffics in third-party software that circumvents technological measures on the Nintendo Switch console by linking to that software on Yuzu's website. Defendant also is directly liable for the infringement of Bunnei and its other agents as discussed herein, and is secondarily liable for the infringement of Nintendo's copyrighted games by Yuzu users.

## FACTUAL BACKGROUND

22.     Nintendo is a company and brand famous throughout the United States and the world, known by consumers of all ages for its video games, video game consoles, and video game characters.

23.     For decades, Nintendo has been a leading developer and producer of video games and video game consoles.  In 1983, Nintendo released the Family Computer in Japan and in 1985, released the Nintendo Entertainment System, or "NES," in the United States, which introduced millions of consumers to now-classic games like *Super Mario Bros.*, *The Legend of Zelda*, and *Donkey Kong*.  The NES console also introduced millions of consumers to some of Nintendo's original and long-lasting characters, including Mario and Luigi, Yoshi, Link, Donkey Kong, and Samus Aran.  Over the ensuing decades, Nintendo followed up the popularity of the NES console with the release of such groundbreaking home video game consoles as the Super Nintendo Entertainment System (or "SNES"), Nintendo 64 (or "N64"), Nintendo GameCube, Wii, Wii U, and the Nintendo Switch, and groundbreaking *handheld*

video game consoles such as the Game Boy, Game Boy Color, Game Boy Advance, Nintendo DS, Nintendo 3DS, the Nintendo Switch, and the Nintendo Switch Lite (a sister console of the Nintendo Switch dedicated to handheld play). The Game Boy family of consoles introduced consumers to landmark games like *Tetris*, *Kirby's Dream Land*, and *Pokémon*. Since 1983, Nintendo has sold more than 5.4 billion video games and more than 750 million hardware units globally. Global sales of the Nintendo Switch alone have topped 139 million, and the top five Nintendo-developed copyrighted Nintendo Switch games have sold over 25 million copies each, rising above 198 million global sales in total.

24.    Nintendo has built its company through substantial creative and financial investment in the development of new consoles, video games, products, technological security protections, intellectual property, and marketing. Nintendo has garnered significant consumer awareness and goodwill through its commitment to developing and delivering innovative, fun, and memorable video game consoles and games. Nintendo's video games are creative, audiovisual works with detailed stories, characters, and elements that are wholly original to Nintendo and protected by the Copyright Act. Nintendo and its authorized licensees create and publish many popular video games made specifically and exclusively for play on Nintendo's video game consoles including the Nintendo Switch.

25.    Because of the lasting popularity of Nintendo's cherished games across all its prior consoles, Nintendo sometimes makes copyrighted games it initially developed for legacy consoles available for play on newer consoles. For instance, in 2017, Nintendo released a dedicated home console called the Super Nintendo Entertainment System Classic Edition, which played games from Nintendo's SNES console from the 1990s and carried twenty-one pre-installed titles from that historic platform. On the Nintendo Switch, Nintendo recently released a remastered version of *Metroid Prime*—a title originally made available in 2002 on

the Nintendo GameCube—and the remastered version has sold over a million units.[3]  Nintendo also offers a paid subscription service on the Nintendo Switch, which gives users access to over one hundred legacy titles from the Game Boy, Game Boy Advance, NES, SNES, and N64 consoles.  In short, the ability to play older Nintendo games on newer Nintendo devices is an important market for Nintendo today and going forward.

26.    The popularity of Nintendo's video games and video game consoles has made Nintendo the target of intellectual property pirates who benefit from Nintendo's innovation and investment by making unauthorized copies of Nintendo's video games, or by creating (and profiting from) unlawful devices and software, such as the Yuzu emulator, that allow others to play pirated copies of Nintendo's video games.

27.    Nintendo has expended significant resources to stop the illegal copying, marketing, sale, and distribution of unauthorized copies of Nintendo's video games (or games made by other Nintendo-authorized licensees) designed to be played on Nintendo's video game consoles, and to stop the illegal trafficking in devices and software that allow users to play unauthorized copies of games, whether on hacked Nintendo Switch consoles or on other unauthorized hardware.  Nintendo's efforts have included the creation and implementation of technological measures in Nintendo's video game consoles and video games that protect against unauthorized access to Nintendo's and its licensees' copyrighted works, and that prevent the unauthorized play of pirated Nintendo games.

***The Technological Measures on the Nintendo Switch and Nintendo Switch Games Protect Nintendo Switch Games Against Piracy.***

28.    In March 2017, Nintendo released a new console called the Nintendo Switch, a home video game console that can also be played "on the go."  It quickly sold out in stores across the country and around the world, and, in the six years since, has become one of the

---

[3]    *Metroid   Prime   Remastered*,   Nintendo   (accessed   February   21,   2024), https://www.nintendo.com/store/products/metroid-prime-remastered-switch/.

best-selling video game consoles of all time. Between the original Nintendo Switch, the Nintendo Switch Lite, and Nintendo Switch OLED (collectively referred to as the "Nintendo Switch"), the console has sold over 139 million units worldwide.

29.    The top five Nintendo-developed games released for the Nintendo Switch alone have sold more than 198 million copies as of February 2024, and individually each title has sold over 25 million copies. These games, as well as dozens of others published by Nintendo, are subject to valid, registered copyrights either owned or exclusively controlled by Nintendo. Nintendo's authorized licensees develop and publish thousands more games on the Nintendo Switch, which are also subject to valid copyrights.

30.    The Nintendo Switch and Nintendo Switch games contain numerous technological measures designed to prevent unauthorized access to the console and games, and to prevent piracy, including the unauthorized copying, playing, or sharing of games.

31.    Nintendo allows users either to purchase authorized physical cartridges with games on them that are inserted into the Nintendo Switch console, or to download digital games from Nintendo's own online store (the Nintendo eShop) while using the Nintendo Switch. The Nintendo eShop is the only lawful way to download Nintendo Switch games in digital format. These authorized copies of Nintendo's games are protected by at least **two or three different technological measures** described herein, each of which in the ordinary course of its operation—*i.e.*, when a user plays a lawfully-purchased copy of a Nintendo Switch game on an authentic Nintendo Switch console—require the application of information or a process with Nintendo's authority for the user to be able to access and play the game. Some of these measures also prevent the games from being copied or distributed without Nintendo's authority.

32.    First, each Nintendo eShop game is accompanied by an encrypted identifier, or "signature" (the "Game Signature"). A signature is a way for the author of a digital file to prove that a particular instance of the file is authentic. Here, an authentic Nintendo Switch

console uses a cryptographic key to verify that Nintendo in fact signed that game file using a secret key.

33.    Second, each game is encrypted.  Nintendo uses industry-standard AES-128 encryption for each of its game files, or "ROMs,"[4] which makes the game file useless unless the user possesses the specific cryptographic key to decrypt it, a key created by and known only to Nintendo in the ordinary course of operation.  The key that unlocks a particular game's encryption, sometimes called a title key for a Nintendo eShop game or a content key for a physical cartridge game (title key and content key shall be collectively referred to herein as the "Title Key"), is distributed by Nintendo with the game file in encrypted form.  In other words, the key to unlock the game file is *itself* encrypted with another cryptographic key.  In the case of physical cartridge games, the Title Key is stored in a header of the game file and is encrypted twice: the console first decrypts the file header, extracts the still-encrypted Title Key, and then decrypts the Title Key.  In the case of Nintendo eShop games, the Title Key is stored outside the game ROM in its own file (a "ticket"); that Title Key too is encrypted twice but the console actually must perform three decryption operations to get it: the console decrypts the file header to get the ID for the ticket, then finds the ticket which contains a double-encrypted Title Key and decrypts it twice using two separate keys available to the console.  Keys used by the console to perform these and other decryption steps and to ultimately produce the decrypted Title Key are part of a set of secured keys on a Nintendo Switch commonly referred to as the "prod.keys."[5]  As noted above, the Title Key is the final key needed to decrypt the game and thus to play the game.  Together, the encryption unlocked by the Title Key and prod.keys, including the secret and proprietary process by which authorized Nintendo games are unlocked

---

[4] ROM stands for read-only memory.
[5] Each act of decryption discussed herein—along with additional decryption operations performed by the console in the ordinary course and by Yuzu to decrypt a given game—relies on a different cryptographic key, each of which is only available to the console, or extracted in a file called the "prod.keys."

by those keys, will be called the "Game Encryption."

34.     Putting this all together, when a user of a Nintendo Switch console goes to play an authentic game, the user's Nintendo Switch must decrypt the Game Encryption—by extracting the specific cryptographic key (the encrypted Title Key), decrypting the Title Key with the console's proprietary keys from the prod.keys (again, known only to authentic Nintendo Switch consoles), and then using the now-decrypted Title Key to decrypt the audiovisual content of the game.  In the case of a Nintendo eShop game, the Nintendo Switch must additionally first verify the Game Signature prior to decrypting the Game Encryption— *i.e.*, verify that the game the user is trying to play is signed by Nintendo, confirming that the game is authentic and was lawfully purchased by that user.  A game can be played on a Nintendo Switch only if all of the required steps are successful.

35.     Third, each authentic Nintendo Switch console also contains many technological measures, such as encrypted system signatures that are checked when the console boots (*i.e.*, starts up).  Much like the measures protecting the games, only if the console's signature verifications confirm the console is authentic and authorized by Nintendo will the Nintendo Switch start up normally.  And the console's data, whether stored on the Nintendo Switch's built-in flash memory or on a removable flash memory card inserted into the console, are also encrypted with a key unique to each Nintendo Switch console.  Those technological measures will be called the "Console Measures."  The Console Measures protect Nintendo's games as well, because in the ordinary course, Nintendo's games are only accessible and playable on an authentic Nintendo Switch.  There is no way to access or play a Nintendo Switch game with Nintendo's authorization on any device other than a Nintendo Switch.

36.     The Game Encryption and Console Measures both protect Nintendo's and its licensees' copyrighted games against unauthorized access and copying, and together will be called the "Technological Measures."

37.     In their ordinary course of operation, the Technological Measures require the

application of information and processes, with the authority of Nintendo, to gain access to Nintendo's or its licensees' copyrighted works, and thus effectively control access to those works and protect rights of the copyright owners of those works.

### Yuzu Overview

38.    Yuzu is a video game emulator for Nintendo Switch games.  A video game emulator is a piece of software that allows general-purpose computing devices to play video games published only for a specific console.  Defendant makes two versions of Yuzu available for download from a standalone website YUZU-EMU.ORG (which pulls the software from a Github server).  These versions are compatible with Windows and Linux systems, including PCs.  Although Yuzu can be downloaded for free, Defendant maintains a Patreon page[6] for the "yuzu Team," which solicits monthly donations for the project, in exchange for early access to "daily updates" and "special unreleased features."  Similarly, on Google Play, Defendant offers a paid "early access" version and a free version for Android devices, both of which were recently released.  Yuzu's Patreon account currently has over 7,000 patrons and, according to the Yuzu Patreon page, earns Defendant and its developers approximately $30,000 a month.  Since the publication of the Android version of Yuzu on Google Play on May 30, 2023, the free version has been downloaded over 1 million times and the paid version has been downloaded over 10,000 times, earning Defendant at least an additional $50,000 plus.

39.    Yuzu only allows for the play of video games published for the Nintendo Switch; Yuzu is not compatible with games made for any other console (including games actually designed for Windows, Linux, or Android systems).

40.    After downloading and installing Yuzu, the user is able to use Yuzu and its circumvention functionality to play pirated games using their associated keys.  All the user needs to do is supply an unlawfully-obtained copy of the "prod.keys"—cryptographic keys that

---

[6] Patreon (PATREON.COM) is a platform where creators can offer paid memberships for content.

Defendant has given them the tools to find—and an encrypted Nintendo Switch game ROM.

41.    As discussed in more detail below, Yuzu's website provides detailed instructions on how to unlawfully acquire the requisite cryptographic keys and unauthorized and encrypted copies of Nintendo Switch games for Yuzu to run.  But all of that is only to make Yuzu function as intended; **but for Yuzu, a user could have keys, and they could have encrypted game ROMs, but they couldn't play games**.

### Defendant Instructs Users How to Circumvent Their Nintendo Switch Consoles and Make Unlawful Copies of Encrypted Games So Yuzu Can Circumvent and Play Those Games.

42.    Yuzu's website provides a "Quickstart Guide" with step-by-step instructions and links to set up Yuzu by using unlawful methods to hack one's own Nintendo Switch and create unauthorized copies of Nintendo Switch games.  As discussed below, Yuzu's lead developer Bunnei has also acknowledged that the Quickstart Guide can be confusing and "users probably just pirate a yuzu folder with everything."

43.    Regarding the Quickstart Guide, most steps pertain to instructing users to hack a Nintendo Switch console to obtain prod.keys from the hacked Nintendo Switch, and to "dump" (or unlawfully copy) Nintendo Switch games, so that the games can be decrypted by Yuzu, accessed, and played.  The Guide reads: "[t]o start playing commercial games, yuzu needs a couple of system files from a **HACKABLE** Nintendo Switch console in order to play them properly."  "Hackable" is in all-caps and bold to indicate that Yuzu will work only for Nintendo Switch models released prior to June 2018, because of a hardware update Nintendo introduced at that time patching a particular hack.[7]  In other words, the Yuzu developers brazenly acknowledge that using Yuzu necessitates hacking or breaking into a Nintendo Switch.

---

[7] Over 110 million of the 139 million Nintendo Switch consoles currently in circulation were manufactured after this time.  Yuzu notes that "[w]hile there are possible ways to jailbreaking [sic] patched [Nintendo] Switch models, instructions for booting into custom firmware may differ from this guide . . . ."

44.    Hacking a Nintendo Switch requires circumventing the many console technological measures, the Console Measures, and installing an unauthorized operating system onto that Nintendo Switch.  Certain devices and software that perform this unlawful task were the subject of three recent civil lawsuits brought by Nintendo, as well as a criminal indictment prosecuted by the U.S. Department of Justice, all of which resulted in judgments providing that these devices and software are unlawful under the DMCA.[8]

45.    Yuzu's Quickstart Guide—on information and belief, drafted by or at the direction of Bunnei—recommends other unlawful devices and software that accomplish similar functions as those at issue in the lawsuits, and the Guide sets forth their operation in great detail.  For example, the Guide links to, among others: (1) TegraRcmGUI, a piece of software that puts a Nintendo Switch console into a hidden recovery mode so the user can execute custom code on the console; (2) Hekate, a "bootloader" that loads and boots unauthorized custom firmware[9] onto a Nintendo Switch; (3) Atmosphère, unauthorized custom firmware that replaces the authentic Nintendo Switch operating system; (4) Lockpick_RCM, a circumvention tool for extracting the Nintendo Switch's protected cryptographic keys (the prod.keys) that will in turn allow decryption of games; (5) NXDumpTool, a module for dumping Nintendo Switch games (from either a physical cartridge or digital download); (6) nxDumpFuse, a tool that merges dumped game files (if a single game was dumped as multiple files); and (7) TegraExplorer, software that dumps a Nintendo Switch's system firmware.

46.    Use of the "Lockpick" tool is a particularly important step if a user is following the Quickstart Guide.  Lockpick extracts the prod.keys from a Nintendo Switch console, the

---

[8] *See* Dkt. 16, *Nintendo of America Inc. v. Dilts et al.*, 3:20-cv-01076 (N.D. Ohio 2020); Dkt. 28, *Nintendo of America Inc v. ANXCHIP.COM et al.*, 2:20-cv-00738-TSZ (W.D. Wash. 2020); Dkt. 24, *Nintendo of America Inc v. Gary Bowser*, 2:21-cv-00519-RSL (W.D. Wash. 2021),

[9] Firmware is a type of software that controls the behavior of a hardware component.

set of cryptographic keys that Yuzu needs to decrypt video game ROMs during its operation.[10]

47.    If a user follows Defendant's instructions and utilizes the unlawful software modules that Yuzu's website links to—*i.e.*, if the user unlawfully circumvents the Console Measures on a Nintendo Switch and obtains the prod.keys using Lockpick—that user will be able to dump an (encrypted) game ROM of a Nintendo Switch game onto a memory card and decrypt and play that dumped game with Yuzu.

48.    This may seem complicated, but in private, Bunnei admits there is a far easier way. When a user raised in a Discord chat operated by Defendant[11] that setting up Yuzu was complicated, Bunnei first said "unfortunately at this time, it's not as simple as" running a simple script, and there are several "specific manual step[s], hence why to go through the whole process, you need to basically learn what they are." "Or," Bunnei added, "users probably just pirate a yuzu folder with everything."

49.    Indeed, on information and belief, most users of Yuzu do not go through the Quickstart Guide and do not circumvent their own Nintendo Switch console to obtain the prod.keys they need, nor do they dump their own games (though both are themselves unlawful). Rather, most obtain the prod.keys and illegal copies of games (which come with the games' encrypted Title Keys) online.

50.    Indeed, libraries of pirated Nintendo Switch ROMs are unfortunately available online. Websites such as NSW2U.COM collect direct download links for thousands of Nintendo Switch titles; *NSW2U.COM specifically notes that the ROMs are compatible with Yuzu.* Other sites will even package a pirated game ROM *with* a copy of Yuzu, so that a user

---

[10] The current iteration of YUZU-EMU.ORG does not feature a live link to Lockpick—which had been hosted on GitHub—because recent enforcement action by Nintendo alerting GitHub to the illegal nature of the software caused GitHub to takedown and delist Lockpick. However, since that time, in Yuzu's Discord server and elsewhere, Defendant's agents have been referring users to a different website (RENA21.GITHUB.IO/YUZU-WIKI/) which does feature a live link to Lockpick.

[11] Discord is an instant messaging application.

can download everything they need to pirate and play the game with one click.[12]

### *To Play a Nintendo Switch Video Game in Yuzu, Yuzu Unlawfully Decrypts Nintendo's Game Encryption.*

51.    As noted above, in the ordinary course of operation users can lawfully purchase authorized physical cartridges with games on them that are inserted into the Nintendo Switch console, or download digital games from Nintendo's own online store (the Nintendo eShop) while using the Nintendo Switch.  Users who have a lawful copy of a Nintendo Switch game only have Nintendo's authorization to play that single copy on an unmodified Nintendo Switch console.  Any unauthorized Nintendo video game ROM—*i.e.*, a game file by itself, not secured on a cartridge or console—is an unlawful copy.  Either a user unlawfully dumped it from a physical cartridge or digital eShop game on a hacked Nintendo Switch, or the user obtained a pirated copy from an online pirate ROM library.

52.    Importantly, an unauthorized Nintendo video game ROM is still an *encrypted* game file, protected by the Game Encryption.  Indeed, Defendant's lead developer admits as much.  When asked in a June 2018 Discord chat whether "xcis"—the file type of game ROM dumps from a cartridge—"come decrypted," Bunnei responded:  "they are encrypted." Nintendo is not aware of any source of decrypted Nintendo Switch game ROMs.

53.    Yuzu allows users to play unauthorized copies of Nintendo Switch games by circumventing the Game Encryption at or immediately before runtime.

54.    Recall that in an authentic Nintendo Switch, the prod.keys are a set of cryptographic keys that perform a number of functions including assisting decrypting games. An authentic Nintendo Switch extracts a game's encrypted Title Key and decrypts it using keys in the prod.keys (following slightly different methods for cartridge and Nintendo eShop games, as discussed above), and then dynamically decrypts the game ROM during runtime using the Title Key and another key from the prod.keys.

---

[12] *See, e.g.*, https://fitgirlrepacks.org/switch-emulated/

55.    Yuzu performs the same functions when a user attempts to play an unauthorized Nintendo Switch game ROM.  Yuzu unlawfully decrypts the ROM's Game Encryption by (1) identifying the encrypted Title Key that accompanies the game file and using keys in the prod.keys to decrypt the Title Key, and (2) decrypting the game ROM using the Title Key. Yuzu unlawfully decrypts unauthorized copies of both physical cartridge and Nintendo eShop games, which come in two different file types, using slightly different methods.  *See supra* ¶ 33.  But both methods require cryptographic keys from the prod.keys and result in decryption of an encrypted ROM.  Then the unauthorized game is able to be played in Yuzu.  All of this, of course, is without Nintendo's authorization.

56.    Yuzu also allows users to dump a "RomFS" directory,[13] which is a game's decrypted file system and which includes the game's audiovisual assets.  As described on YUZU-EMU.ORG, this includes the game's "textures, text, fonts, sounds, or other graphical assets."  Although it is not possible to play the game solely from this directory, users can use the outputted copies of the game's audiovisual content to modify the content and thus alter gameplay in Yuzu the next time the game is run.  On information and belief, this feature is how many pirates access and distribute game assets from prerelease games, as described in more detail below.  Yuzu's access and copying of any Nintendo game's audiovisual assets is without Nintendo's authorization and would not be possible without Yuzu decrypting the game's Game Encryption.

### *Yuzu is Used for Widespread Piracy and Defendant Has Knowledge of the Infringements.*

57.    Any copy of a Nintendo Switch game ROM not on an authorized cartridge or console is an unauthorized copy and therefore infringing.  Copies played in Yuzu would

---

[13] *See* https://yuzu-emu.org/help/feature/game-modding/.

otherwise have to be purchased if Nintendo offered its games on the PC platform.[14]  As the copyright owner of its creative games, Nintendo has the right to decide whether or when to enter the market of games for platforms other than its own console, both with respect to its current and forthcoming games and with respect to any game in its legacy collection.

58.    But the harm to Nintendo caused by Defendant and Yuzu goes far beyond users making unauthorized copies of games they have lawfully purchased.  On information and belief, the vast majority of Yuzu users are using Yuzu to play downloaded pirated games.  On information and belief, Yuzu developers similarly test and play downloaded pirated games in Yuzu, including notably prerelease copies, without which the developers would not be able to get Nintendo Switch games running in Yuzu so quickly after release, *see infra* ¶¶ 71–72.[15] This piracy causes Nintendo tremendous harm, including millions of dollars of monetary harm from lost video game sales both of Nintendo's and its licensees' copyrighted games, and loss of goodwill.

59.    Indeed, there is a robust community of intellectual property thieves who distribute pirated Nintendo Switch ROMs for the broad community who play those ROMs in Yuzu.  For instance, on Reddit, a social media platform, until June 2023 there was a "Yuzu Pirates" subreddit which provided advice to would-be pirates and links to online ROM repositories where users could download pirated games for play in Yuzu; "Happy pirating!", read the subreddit description.  That subreddit alone had *over 70,000 members*.  And non-members could see the advice and ROM repository links, so the number of people who accessed those links likely dwarfed the number of members.  In June 2023, Reddit banned the

---

[14] As a clear demonstration of this, certain of Nintendo's third-party licensees release their games not only on the Nintendo Switch but also on PCs and other platforms.  If users wish to lawfully play those games on multiple platforms, they must buy the games separately for each platform.  *See, e.g.*, Jesse Lennox, *All cross-platform games (PS5, Xbox Series X, PS4, Xbox One, Switch, PC)*, DigitalTrends (Feb. 16, 2024), https://www.digitaltrends.com/gaming/all-cross-platform-games/ (compiling list of games available (for purchase) on multiple platforms including the Nintendo Switch).

[15] As discussed below, prelease copies are played by Yuzu users too, which Defendant and its agents know and encourage.

subreddit as violating its content policy.



60.    One of the links provided on the subreddit went to a GitHub page with simplified instructions for installing Yuzu; those instructions are still online. The instructions do not include any of the complex steps for hacking a Nintendo Switch console and dumping one's own games. Instead, the alternative instructions merely provide links where users can download the requisite keys (the prod.keys) and pirated games for use in Yuzu.

61.    As another example, recently, Nintendo published the already-acclaimed Nintendo Switch title *The Legend of Zelda: Tears of the Kingdom* ("*Zelda: TotK*") and made it available for play on May 12, 2023. However, full copies of the game ROM began to be circulated online on May 1, 2023. Because *Zelda: TotK* had yet to be released to the public, every copy in circulation was undoubtedly a pirated copy and every user who possessed a copy had not lawfully purchased the game.

62.    Nintendo tracks the availability of pirated copies of its games online. Between May 1 and May 10, *Zelda: TotK* was successfully downloaded ***over one million times*** and downloads were attempted another million times. The illegally downloaded copies were capable of being played in Yuzu, and over twenty percent of all the download links for the

game specifically referred to emulation in the link title, URL, or filename, many of which specifically referred to Yuzu.

63.    Notably, between May 1 and May 12, membership on the Yuzu Patreon, which provides paid members more updated "early access" builds of Yuzu, [16] *doubled*.    On information and belief, thousands of additional paid members of Yuzu's Patreon signed up so that they could download the early access build and play unlawful copies of *Zelda: TotK*.    On information and belief, Defendant and its agents were fully aware that the reason membership of the Patreon exploded was that Yuzu was being used for unlawful play of pirated copies of *Zelda: TotK*.    Indeed, Bunnei implemented a ban on discussing *Zelda: TotK* emulation in Yuzu's Discord server because so many Yuzu users were trying to seek support emulating it. Additionally, because Yuzu is open source, many individuals quickly developed and released Yuzu mods that were capable of playing *Zelda: TotK*.    Defendant and its agents were aware of these efforts too, and Bunnei said as much in an interview Bunnei gave to PC Gamer on the day of *Zelda: TotK*'s release, explicitly referring to the gaming community releasing custom Yuzu emulator builds to play *Zelda: TotK* days ahead of its release.    Two images of *Zelda: TotK* running in Yuzu prior to the game's release date are shown here:



---

[16] "Build" in this context refers to an updated version of software.



Tears of the Kingdom Yuzu fix mod playtest [Read description]

64.    The prevalence of piracy of *Zelda: TotK* in the days leading up to its release, in large part through emulators such as Yuzu, harmed law-abiding Nintendo customers too.  For example, many fans of *The Legend of Zelda* were forced to avoid social media to prevent seeing spoilers and preserve their surprise and delight for the actual game release, as seen in these fan posts:

 **Stealth** ✓
@Stealth40k                                                                          ···

Tears of the Kingdom leaked so there are new screenshots floating around.

I've waited 4+ years for the game, we are so close to release, I'm trying so hard not to see ANYTHING.

It's a shame this regularly happens for big games.

6:53 AM · May 1, 2023 · **154.8K** Views



**Zelda Countdown Bot**
@Zelda_Countdown
🔵 Automated

PSA – Looks like copies of TotK are out there now, so there's high chances of major plot spoilers showing up in the coming hours/days.

Avoid hashtags/tweet replies (or just Twitter in general) if you're trying to go into the game blind!

9:41 AM · May 1, 2023 · **117.7K** Views



**star✦**
@Staryfate_

i'm so unbelievably excited for tears of the kingdom, i know i would be even more excited if i was interacting with the community more and looking at all the hype but i'm cutting myself off for spoiler reasons, i refuse to be spoiled for this game

1:39 PM · May 2, 2023 · **457** Views

65. Yuzu also has a feature called "Telemetry," which, according to Yuzu's website, collects anonymous data about its users' use of the software. This data, again according to Yuzu, includes what games users are playing so Yuzu developers can "discover what are the most popular games and hardware configurations, where emulated games crash in yuzu most often, and more." On information and belief, Plaintiff expects discovery to show that this data reveals to Defendant and its developers that its users are playing pirated copies of games, including because the data reflects people playing games prior to their official release date. Indeed, a "Yuzu Progress Report" for June 2023 noted that, according to Yuzu data, "*Tears of the Kingdom* is by far the most played game on [Y]uzu . . . ."

### *Defendant and Bunnei's Circumvention And Infringement of Nintendo's Games.*

66. Yuzu's lead developer Bunnei has been at the center of Nintendo console emulation for years. Bunnei says they provided "minor contributions" to an open source Nintendo GameCube emulator called "Dolwin" in the early 2000s before writing their own

Nintendo GameCube emulator called "Gekko" in 2005. Bunnei was then the lead developer for "Citra," a Nintendo 3DS emulator which is still widely-available and still supported.

67.    In January 2018, less than a year after the launch of the Nintendo Switch—and driven by their "gravitat[ion] to the latest and greatest thing, for better or worse"—Bunnei announced the forthcoming creation of the Yuzu emulator. By April 2018, Yuzu could play a handful "of the Nintendo Switch's more primitive games," and steady modifications since then have allowed Yuzu to play the vast majority of current Nintendo Switch games. Indeed, Yuzu's website provides a "Game Compatibility List," which identifies *over 2,500 different games* that Yuzu developers, including Bunnei, have tested and played in Yuzu, over 1,800 of which are "playable from start to finish." However, the number of compatible games is likely significantly higher as the available list is reportedly outdated by two years.



68.    Bunnei describes themself as Yuzu's "author" and "project lead." In interviews, Bunnei has stated that they "did most of the work to initially stand up the project [and] get [Nintendo] Switch games loading" as well as "most of the work to get early [graphics] rendering working, and the initial implementation" of the audio backend. Bunnei states they have "a lot of breadth in [their] knowledge" of the entire system. Yuzu's code history bears this out. As Yuzu is open-source, records reflecting users' contributions to the software are public. Github's records indicate that Bunnei has added and revised more lines of Yuzu code than any other user.

69.    As "project lead," Bunnei has knowledge of and directs the conduct of each of the several other developers who contribute to Yuzu. For instance, Yuzu's website has a blog that includes at least monthly updates on the status of development of the emulator, including what each developer has worked on that month and what improvements have been made to the emulation of specific games. Bunnei is regularly featured in the monthly updates. The

developers also communicate in the Yuzu Discord chat and Bunnei has publicly asked specific developers to work on specific tasks for the project.

70.     Bunnei has made blatantly clear that a central goal of theirs is to get recently-released and in-demand titles playing unlawfully in Yuzu.  When asked what areas of Nintendo Switch emulation Bunnei is most interested in, they responded, "[a]ny changes that **get new games booting for the first time**, rendering better, or working at a silky smooth framerate, really excite me."

71.     Consistent with that drive, Bunnei regularly works to get new Nintendo Switch games running in Yuzu on the day of their release.  In addition to *Zelda: TotK*, discussed above, Yuzu and Bunnei specifically have announced that major Nintendo titles such as *Metroid Dread*, *Super Mario 3D World + Bowser's Fury*, and *Pokemon Let's Go, Eevee!* and *Let's Go, Pikachu!* were playable in Yuzu on their day of release, as for instance seen in Bunnei's post on November 16, 2018:



72.     In fact, in many instances Bunnei officially gets new games running *the day before* the game's release in the United States.  For instance, Bunnei linked to a Patreon article—which, on information and belief, Bunnei drafted—that announced late on May *28*,

2020, the day *before Xenoblade Chronicles* was released, that the game was running in Yuzu:



73.     Bunnei has repeatedly made clear that they have dumped games.  For those games, Bunnei has circumvented the Console Measures and the Game Encryption and has made unauthorized reproductions.

**COUNT ONE**

**(Trafficking in Circumvention Technology in Violation of 17 U.S.C. § 1201(a)(2))**

74.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 73 as if fully set forth herein.

75.     Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2), prohibits, in a general sense, the trafficking in technology primarily designed to circumvent technological measures that effectively control access to copyrighted works.  The statute provides, in pertinent part,

that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act];
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act]."

76.    As discussed *supra*, ¶¶ 30–37, the Technological Measures effectively control access to works protected by the Copyright Act, including Nintendo Switch video games in which Nintendo owns or exclusively controls copyrights.

77.    As also discussed *supra*, the Technological Measures—including the Game Encryption—require, in the ordinary course of their operation, the application of information, or a process or a treatment, with Nintendo's authority, to gain access to Nintendo Switch video games.

78.    Yuzu, designed by Defendant and its agents, circumvents the Game Encryption on Nintendo Switch video games including by decrypting their many layers of encryption, thereby enabling access to and play of those games on unlicensed platforms.  Yuzu circumvention as described herein is thus both primarily designed to circumvent an effective technological measure and has only limited commercially significant purpose or use other than to circumvent an effective technological measure.

79.    Defendant and its agents know that Yuzu is designed, implemented, and used to circumvent the Game Encryption, and their conduct promoting Yuzu thus constitutes

marketing with knowledge for Yuzu's use in circumventing an effective technological measure.

80.    By developing Yuzu, including paying developers and directing their conduct, Defendant manufactures a technology that violates 17 U.S.C. §§ 1201(a)(2)(A), (B), and/or (C).

81.    Through YUZU-EMU.ORG, Github, Google Play, and other channels of distribution, Defendant offers to the public, provides, and otherwise traffics in Yuzu, in violation of 17 U.S.C. §§ 1201(a)(2)(A), (B), and/or (C).

82.    Manufacturing, and each offering to the public, provision, or other act of trafficking in Yuzu constitutes a violation of 17 U.S.C. § 1201 for which Plaintiff is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

83.    Additionally, on YUZU-EMU.ORG, Defendant offers to the public, provides, and otherwise traffics in software that circumvents the Console Measures on Nintendo Switch consoles, by providing direct links to such software on other websites.  This software includes TegraRcmGUI, Lockpick_RCM, and NXDumpTool, among others.  These separate pieces of software similarly violate § 1201(a)(2) because they are primarily designed to circumvent the Console Measures.  Each offering to the public, provision, or other act of trafficking in links to this and other circumvention software constitutes a violation of 17 U.S.C. § 1201 for which Nintendo is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

84.    Defendant's acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff.

85.    As a direct and proximate result of Defendant's violations of 17 U.S.C. § 1201, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of offering to the public, provision, or otherwise trafficking in circumvention technology, or such other amounts as may be proper

under 17 U.S.C. § 1201(c). In the alternative, pursuant to 17 U.S.C. § 1201(c)(2), Plaintiff is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

86. Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b).

87. Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiff is entitled to permanent injunctive relief prohibiting Defendant and its members and agents from engaging in further acts of offering to the public, providing, or otherwise trafficking in Yuzu or other circumvention software.

## COUNT TWO

### (Trafficking in Circumvention Technology in Violation of 17 U.S.C. § 1201(b)(1))

88. Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 87 as if fully set forth herein.

89. Section 1201(b) of the DMCA, 17 U.S.C. § 1201(b), in a general sense, prohibits the trafficking in devices that are primarily designed to circumvent technological measures that protect against the violation of rights protected under the Copyright Act. The statute provides, in pertinent part, that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under [the Copyright Act] in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under [the Copyright Act] in a work or a

portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under [the Copyright Act] in a work or a portion thereof."

90.    As discussed *supra*, ¶¶ 30–37, the Technological Measures effectively protect the rights of copyright owners in works protected by the Copyright Act.  These copyrighted works include Nintendo Switch video games in which Nintendo owns or exclusively controls copyrights.

91.    As discussed above, Plaintiff's Technological Measures—including the Game Encryption—in the ordinary course of their operation, prevent, restrict, or otherwise limit the exercise of a right of a copyright owner under the Copyright Act, by controlling or managing whether one can *copy* Nintendo's copyrighted works, *distribute* unauthorized copies of Nintendo's copyrighted works, and *play* (publicly perform) unauthorized copies of Nintendo's copyrighted works.

92.    Yuzu, designed by Defendant and its agents, circumvents the Game Encryption on Nintendo Switch video games including by decrypting their many layers of encryption, thereby enabling the copying and play of those games on unlicensed platforms.  Yuzu circumvention as described herein is thus both primarily designed to circumvent protection afforded by a technological measure and has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure.

93.    Defendant and its agents know that Yuzu is designed, implemented, and used to circumvent the Game Encryption, and their conduct promoting Yuzu thus constitutes marketing with knowledge for Yuzu's use in circumventing protection afforded by a technological measure.

94.    By developing Yuzu, including paying developers and directing their conduct, Defendant manufactures a technology that violates 17 U.S.C. §§ 1201(b)(1)(A), (B), and/or (C).

95.    Through YUZU-EMU.ORG, Github, Google Play, and other channels of distribution, Defendant offers to the public, provides, and otherwise traffics in Yuzu, in violation of 17 U.S.C. §§ 1201(b)(1)(A), (B), and/or (C).

96.    Manufacturing, and each offering to the public, provision, or other act of trafficking in Yuzu constitutes a violation of 17 U.S.C. § 1201 for which Plaintiff is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

97.    Additionally, on YUZU-EMU.ORG, Defendant offers to the public, provides, and otherwise traffics in software that circumvents the Console Measures on Nintendo Switch consoles, by providing direct links to the software on other websites.  This software includes TegraRcmGUI, Lockpick_RCM, and NXDumpTool, among others.  These separate pieces of software similarly violate § 1201(b)(1) because they are primarily designed to circumvent the Console Measures.  Each offering to the public, provision, or other act of trafficking in links to this and other circumvention software constitutes a violation of 17 U.S.C. § 1201 for which Nintendo is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

98.    Defendant's acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff.

99.    As a direct and proximate result of Defendant's violations of 17 U.S.C. § 1201, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of offering to the public, provision, or otherwise trafficking in circumvention devices, or such other amounts as may be proper under 17 U.S.C. § 1201(c).  In the alternative, pursuant to 17 U.S.C. § 1201(c)(2), Plaintiff is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be

proven at trial.

100.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b).

101.    Defendant's conduct has caused and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiff is entitled to permanent injunctive relief prohibiting Defendant from engaging in further acts of offering to the public, providing, or otherwise trafficking in Yuzu or other circumvention software.

## **COUNT THREE**

### **(Circumvention of Technological Measures in Violation of 17 U.S.C. § 1201(a)(1))**

102.    Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 101 as if fully set forth herein.

103.    Section 1201(a)(1)(A) of the DMCA, 17 U.S.C. § 1201(a)(1)(A), in a general sense, prohibits circumvention of a technological measure that effectively controls access to a work protected by the Copyright Act.

104.    For the reasons set forth *supra*, ¶¶ 30–37, the Technological Measures are each effective and control access to works protected by the Copyright Act, and Yuzu circumvents those measures.

105.    During development of Yuzu, Defendant's agents, including Bunnei, at minimum: (1) hacked at least one Nintendo Switch console; (2) dumped games from a hacked Nintendo Switch console; and (3) loaded those game copies into Yuzu and played them.  Each of those steps requires circumvention of one or more of the Technological Measures.  Defendant's agents have circumvented the Console Measures as to each Nintendo Switch console they have hacked and have circumvented Nintendo's Game Encryption for each game they have played in the emulator.  On information and belief, Defendant's agents have also accessed and played games in Yuzu that they did not lawfully purchase.  As to each of those,

similarly, by playing the game ROM in Yuzu, Defendant's agents have circumvented Nintendo's Game Encryption. The agents were acting within the scope of the authority granted to them by Defendant, and Defendant is liable for the conduct of its agents.

106. Each act of circumvention constitutes a violation of 17 U.S.C. § 1201 for which Plaintiff is entitled to damages under 17 U.S.C. § 1203(c), and injunctive relief under § 1203(b)(1).

107. Defendant and its agents' acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Plaintiff. Defendant is liable for each of its agents' illegal acts as set forth herein.

108. As a direct and proximate result of Defendant's violations of 17 U.S.C. § 1201, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(A), in the amount of $2,500 with respect to each act of circumvention, or such other amounts as may be proper under 17 U.S.C. § 1201(c). In the alternative, pursuant to 17 U.S.C. § 1201(c)(2), Plaintiff is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

109. Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b).

110. Defendant and its agents' conduct has caused and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiff is entitled to permanent injunctive relief prohibiting Defendant, its members, and its agents from engaging in further acts of offering to the public, providing, or otherwise trafficking in Yuzu or other circumvention software.

## COUNT FOUR

### (Unauthorized Reproduction and Distribution of Protected Works in Violation of 17 U.S.C. §§ 106(1), 106(3), 501(a))

111. Plaintiff repeats and realleges every allegation contained in paragraphs 1

through 110 as if fully set forth herein.

112.    Section 106 of the Copyright Act, 17 U.S.C. § 106, provides, in pertinent part, that the owner of a copyright under the Copyright Act has the exclusive right to reproduce, distribute, publicly perform, and publicly display individual images of its audiovisual works.

113.    Plaintiff owns valid, registered copyrights in numerous games for the Nintendo Switch.  For instance, Nintendo holds copyrights in *The Legend of Zelda: Tears of the Kingdom*, [17] *Animal Crossing: New Horizons*, [18] *Mario Kart 8 Deluxe*, [19] *Xenoblade Chronicles: Definitive Edition*,[20] *Paper Mario: The Origami King*,[21] and *Metroid Dread*.[22] Upon information and belief, Defendant's agents infringed these copyrights and Plaintiff expects discovery to reveal that many more games have been infringed in which it holds valid, registered copyrights.  Nintendo has not licensed its rights to the Defendant or otherwise provided authorization for Defendant or its agents to exercise any of Nintendo's exclusive rights in its copyrighted games.

114.    Defendant's agents, such as Bunnei, admit to dumping Nintendo games they have lawfully purchased and copying the game ROMs into Yuzu.  On information and belief, Bunnei dumped and copied each of the titles in Paragraph 113 while acting within the scope of their authority from Defendant.  Each such reproduction constitutes a violation of 17 U.S.C. § 501(a) for which Plaintiff is entitled to damages under 17 U.S.C. §§ 504 & 505 and injunctive relief under §§ 502 & 503.

115.    On information and belief, Defendant's agents, while acting within the scope of their authority from Defendant, have also downloaded game ROMs online from pirate websites which they have not lawfully purchased.  Each such reproduction constitutes a violation of 17

---

[17] Copyright Reg. No. PA 2-411-256.
[18] Copyright Reg. No. PA 2-233-840.
[19] Copyright Reg. No. PA 2-051-900.
[20] Copyright Reg. No. PA 2-260-078.
[21] Copyright Reg. No. PA 2-268-245.
[22] Copyright Reg. No. PA 2-322-591.

U.S.C. § 501(a) for which Plaintiff is entitled to damages under 17 U.S.C. §§ 504 & 505 and injunctive relief under §§ 502 & 503.

116.    On information and belief, Yuzu developers have transmitted copies of game ROMs of Nintendo's games to each other while acting within the scope of their authority from Defendant.  Each such distribution constitutes a violation of 17 U.S.C. § 501(a) for which Plaintiff is entitled to damages under 17 U.S.C. §§ 504 & 505 and injunctive relief under §§ 502 & 503.

117.    Defendant and its agents' acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Nintendo.  Defendant is liable for each of its agents' acts as set forth herein.

118.    As a direct and proximate result of Defendant's violations of 17 U.S.C. § 501(a), Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c)(2), in the amount of $150,000 with respect to each copyrighted work, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

119.    Plaintiff is entitled to its full costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

120.    Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to permanent injunctive relief prohibiting Defendant from engaging in further acts of infringement of Nintendo's protected works.

## COUNT FIVE

### (Contributory and Inducement Liability For Unauthorized Reproduction of Protected Works in Violation of 17 U.S.C. §§ 106(1), 501(a))

121.    Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 120 as if fully set forth herein.

122.    Section 106 of the Copyright Act, 17 U.S.C. § 106, provides, in pertinent part, that the owner of a copyright under the Copyright Act has the exclusive right to reproduce its audiovisual works.

123.    Plaintiff owns valid, registered copyrights in numerous games for the Nintendo Switch.  For instance, Nintendo holds copyrights in *The Legend of Zelda: Tears of the Kingdom*,[23] *Animal Crossing: New Horizons*,[24] and *Mario Kart 8 Deluxe*.[25]  Plaintiff expects discovery to reveal that many more of its copyrighted games have been infringed by Yuzu users and developers.  Nintendo has not licensed its rights to the Defendant nor otherwise provided authorization for Defendant or its agents to exercise any of Nintendo's exclusive rights in its copyrighted games.

124.    On information and belief, Yuzu users have (1) dumped Nintendo games they have lawfully purchased and copied the game ROMs into Yuzu; and (2) obtained Nintendo games online from pirate websites and copied those game ROMs into Yuzu.  Each such reproduction constitutes a violation of 17 U.S.C. § 501(a) for which Plaintiff is entitled to damages under 17 U.S.C. § 504 and injunctive relief under § 502.

125.    Users make infringing copies of Nintendo's copyrighted games on unauthorized platforms when they play those games on such platforms.  Unauthorized copies of Nintendo games' audiovisual content are made dynamically during Yuzu's operation, including as the game content is decrypted.  Additionally, Yuzu copies a game's audiovisual assets if a user opts to dump the game's "RomFS" directory, as described in paragraph 56 above.  Defendant has knowledge of Yuzu users' direct infringement and materially contributes to each of their acts of infringement because it designs and provides them with the technology that enables the play of unauthorized game copies on unauthorized platforms, *i.e.*, Yuzu.  Additionally,

---

[23] Copyright Reg. No. PA 2-411-256
[24] Copyright Reg. No. PA 2-233-840
[25] Copyright Reg. No. PA 2-051-900

Defendant induces that infringement because Defendant has engaged in purposeful conduct that encourages and is intended to encourage those users to make infringing copies of Nintendo's copyrighted games on unauthorized platforms and to play those games on such platforms.

126.    As such, Defendant is secondarily liable for each act of infringement (unauthorized reproduction) performed by Yuzu users.

127.    Defendant's acts are willful, intentional, purposeful, and in disregard of and indifferent to the rights of Nintendo.

128.    As a direct and proximate result of Defendant's violations of 17 U.S.C. § 501(a), Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c)(2), in the amount of $150,000 with respect to each copyrighted work, or such other amounts as may be proper under 17 U.S.C. § 504(c).  In the alternative, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages, as well as to Defendant's profits from these violations, in amounts to be proven at trial.

129.    Plaintiff is entitled to its full costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

130.    Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Nintendo great and irreparable injury for which there is no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to permanent injunctive relief prohibiting Defendant from engaging in further acts of contributing to or inducing others to reproduce Nintendo's protected works.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For a declaration that Defendant's activities as alleged herein constitute violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501.

2.      For such equitable relief under Titles 17 and 28, and this Court's inherent equitable powers, as is necessary to prevent or restrain Defendant's further violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501, including a permanent injunction prohibiting Defendant and its officers, agents, servants, employees, attorneys, and all third parties in active concert or participation with any of them from: (a) manufacturing, offering to the public, providing, or otherwise trafficking in the Yuzu emulator, and any other circumvention devices or software that target Nintendo, Nintendo's consoles, or Nintendo's copyrighted works; (b) infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of, any of Nintendo's works protected by the Copyright Act, whether now in existence or hereafter created; (c) enjoining Defendant and all third parties with notice of the Order from supporting or facilitating access to any or all domain names, URLs, websites (including, without limitation, YUZU-EMU.ORG), chatrooms, and other social media websites or applications through which Defendant traffics in the Yuzu emulator or other circumvention devices that threaten Plaintiff's Technological Measures or which infringe Plaintiff's rights under the Copyright Act; and (d) prohibiting Defendant from engaging in any other violation of the DMCA or the Copyright Act, or any other federal or state law, as respects Nintendo.

3.      For entry of an order, pursuant to 17 U.S.C. §§ 502, 1203, 28 U.S.C. § 1651(a), and this Court's inherent equitable powers, requiring Defendant and its officers, agents, servants, employees, attorneys, and all third parties in active concert or participation with any of them: (a) to surrender and cease to use the domain name YUZU-EMU.ORG, and any variant thereof controlled by Defendant; (b) to immediately transfer the domain name YUZU-EMU.ORG, and any variant thereof controlled by Defendant, to Nintendo's control; and (c) enjoining Defendant and all third parties with notice of the Order from supporting or facilitating access to any or all domain names, URLs, and websites (including, without limitation, YUZU-EMU.ORG) through which Defendant infringes Nintendo's copyrights.

4.    For entry of an order, pursuant to 17 U.S.C. §§ 503, 1203, providing for the seizure, impoundment, and destruction of all copies of the Yuzu emulator or other devices or software that threaten Plaintiff's Technological Measures, and all other electronic material or physical devices within Defendant's custody, possession, or control—including any hard drives or other electronic storage devices containing such material—that violate Nintendo's rights under the DMCA or infringe upon copyrights owned or exclusively controlled by Nintendo.

5.    For entry of an order requiring Defendant, within thirty (30) days after service of the judgment with notice of entry thereof upon it, to file with the Court and serve upon Nintendo a written report under oath setting forth in detail the manner in which Defendant has complied with paragraphs 2, 3, and 4 of this Prayer for Relief, *supra*.

6.    For an award of statutory damages pursuant to 17 U.S.C. §§ 504, 1203(c), in the amount of $2,500 per violation of 17 U.S.C. § 1201, arising from Defendant's willful violations of the Anti-Circumvention and Anti-Trafficking provisions of the DMCA, and $150,000 per violation of 17 U.S.C. §§ 106, 501, arising from Defendant's willful violations of Nintendo's exclusive rights under the Copyright Act.   In the alternative, pursuant to 17 U.S.C. § 1203(c)(3)(B) and 17 U.S.C. § 504(b), Plaintiff may elect to receive actual damages as well as Defendant's profits from its violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501, in amounts to be proven at trial.

7.    For an accounting, the imposition of a constructive trust, restitution of Defendant's unlawful proceeds from its violations of 17 U.S.C. § 1201 and 17 U.S.C. §§ 106, 501, and damages according to proof.

8.    For Plaintiff's costs and reasonable attorneys' fees, pursuant to 17 U.S.C. § 1203(b) and 17 U.S.C. § 505.

9.    For pre-judgment and post-judgment interest; and

10.    For such other relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury.


DATED this 26th day of February, 2024.


Respectfully submitted,

**ADLER POLLOCK & SHEEHAN P.C.**       **JENNER & BLOCK LLP**


  /s/ Nicole Benjamin                            /s/ Alison Stein
Nicole J. Benjamin (#7540)              Alison I. Stein (*Pro Hac Vice Motion*
One Citizens Plaza, 8th Floor           *Forthcoming*)
Providence, RI 02903                    Cayman C. Mitchell (*Pro Hac Vice Motion*
Tel: (401) 427-6212                     *Forthcoming*)
Fax: (401) 751-0604                     1155 Avenue of the Americas
nbenjamin@apslaw.com                    New York, NY 10036
                                        Tel: (212) 891-1600
                                        Fax: (212) 891-1699
                                        astein@jenner.com
                                        cmitchell@jenner.com

                                        *Attorneys for Plaintiff Nintendo of America Inc.*